UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-20408-JEM

KENNETH CAREY,

      Plaintiff,

v.

JONATHAN KIRK, *et al*.

      Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT
KHALIK CALDWELL'S MOTION TO COMPEL ARBITRATION**

**THIS CAUSE** is before the Court on Defendant, Khalik Caldwell's ("Caldwell"), Motion to Compel Arbitration of Count I of the Complaint and to Stay Action Against Him (the "Motion"). ECF No. [14]. Plaintiff, Kenneth Carey ("Plaintiff"), filed a Response to the Motion, ECF No. [24], and Caldwell filed a Reply, ECF No. [26]. On May 4, 2021, the parties appeared for a hearing on this matter, ECF No. [40], and on June 29, 2021, the parties appeared for an evidentiary hearing, ECF No. [57]. After due consideration of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that the Motion, ECF No. [14], be **GRANTED**.

    **I.**    **BACKGROUND**

On February 1, 2020, Plaintiff filed a Complaint in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, asserting: (1) one count for breach of contract against Defendant Caldwell (Count I); (2) one count for breach of an oral contract against Defendants Jonathan Kirk ("Kirk"), Billion Dollar Baby Entertainment ("BDBE"), Interscope Records ("Interscope"), and Universal Music Group ("Universal") (Count II); (3) one count for assault against Defendant Kirk

1

and Unknown Conspirators Nos. 1–4 (Count III); (4) one count for battery against Defendant Kirk and Unknown Conspirators Nos. 1–4 (Count IV); (5) one count for promissory estoppel against Defendants Kirk, BDBE, Interscope, and Universal (Count V); (6) one count for civil conspiracy against Defendant Kirk and Unknown Conspirators Nos. 1–4 (Count VI); (7) one count for defamation per se against Defendant Kirk (Count VII); and (8) one count for intentional infliction of emotional distress against Defendant Kirk and Unknown Conspirators Nos. 1–4 (Count VIII). ECF No. [1-3]. On January 29, 2021, the case was removed to this Court. ECF Nos. [1], [1-1].

Plaintiff "is an event planner, event organizer and promoter who earns money arranging performances for music artists." ECF No. [1-3] ¶ 16. Defendant Caldwell is a "notable rapper[]/musical artist[]." *Id.* ¶ 17. Plaintiff alleges that he entered into a written agreement with Defendant Caldwell "to perform at his birthday party at Café Iguana on the evening of January 2, 2020" for a total of $17,000.00 payable to Defendant Caldwell. *Id.* ¶¶ 2, 18. Plaintiff contends that he remitted an initial deposit to Defendant Caldwell in the sum of $10,000, "with a balance of $7,000.00 due upon arrival at the event." *Id.* ¶ 19. Plaintiff states that Defendant Caldwell did not appear or perform on the date of the event, and as a result, Plaintiff suffered damages in the amount of $225,000.00. *Id.* at 7. Along with the Complaint and in support of his breach of contract claim against Defendant Caldwell, Plaintiff submitted only a screenshot of the first page of the Performance Agreement. *Id.* at 20.

On September 30, 2020, Defendant Caldwell filed the instant Motion, requesting "that the Court compel arbitration of Count I of the Complaint and stay that claim pending resolution of the arbitration." ECF No. [14] at 8. Along with the Motion, Defendant Caldwell submitted the entire Performance Agreement. ECF No. [14-1] at 5–9. The Performance Agreement submitted by Defendant Caldwell contains the following provision in the terms and conditions section:

> Any claim or dispute arising out of or relating to this agreement or the breach thereof shall be governed by the laws of the state of NORTH CAROLINA and settled by arbitration in CHARLOTTE, NC accordance with the rules or regulations then obtaining of the American Arbitration Association. The parties hereto agree to be bound by the award in such arbitration and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

*Id.* at 6 (emphasis in original). The Performance Agreement also contains the following provision in the choice of law/arbitration section:

> This Agreement shall be construed in accordance with the laws of the State of TENNESSEE. Any claim or dispute arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration with the rules and regulations of the American Arbitration Association. The parties hereto agree to be bound by the award in such arbitration and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

*Id.* at 8 (emphasis in original).

Defendant Caldwell argues that because the Performance Agreement is binding on both parties, the arbitration provisions contained therein are mandatory. ECF No. [14] at 4. Defendant Caldwell notes that although the Performance Agreement was executed by BDBE, he is entitled to compel arbitration as a non-signatory because: (1) he is designated a party under the Performance Agreement, specifically defined as "Artist" in the first page; (2) the Complaint alleges that Defendant Caldwell, not BDBE, breached the Performance Agreement; (3) the Performance Agreement was signed by K. Serenity Virgil on behalf of BDBE, which is Defendant Caldwell's management agency; and (4) under Florida law, non-signatories are entitled to compel arbitration. *Id.* at 5–7. Finally, Defendant Caldwell requests that a stay be imposed only as to Count I, pending the completion of arbitration. *Id.* at 7.

3

In response, Plaintiff argues that "[he] does not believe" the Performance Agreement submitted by Defendant Caldwell is the "correct contract that he agreed to." ECF No. [24] ¶ 1. Plaintiff states that he "believes that he never agreed to an [a]rbitration clause[] or a venue clause[] outside of Florida." *Id.* ¶ 3. As a result, Plaintiff requests more time to conduct discovery for the purpose of locating the "original agreement." *Id.* ¶ 5. Notwithstanding, Plaintiff argues that the arbitration provisions relied on by Caldwell are unenforceable because they are part of an unconscionable contract of adhesion. *Id.* ¶ 8–9. Plaintiff further states that the Performance Agreement submitted by Defendant Caldwell was altered after the fact. *Id.* ¶ 9. Finally, Plaintiff avers that the subject arbitration provisions preclude him from resolving this matter, thereby effectively inhibiting his right to due process, seek justice, and enforce discovery. *Id.* ¶ 10.

In reply, Defendant Caldwell argues that Plaintiff has failed to meet his burden of demonstrating that a valid arbitration agreement does not exist. ECF No. [26] at 1. Specifically, Defendant Caldwell notes that Plaintiff's Response is not supported by any evidence, but instead, only contains speculation that the Performance Agreement was fabricated. *Id.* at 1–3. Finally, Defendant Caldwell asserts that Plaintiff's challenges to the existence and validity of the Performance Agreement as a whole, including whether it is a contract of adhesion, must be decided by the arbitrator. *Id.* at 4–6.

On June 23, 2021, Plaintiff submitted a complete Performance Agreement, which it now claims is the operative agreement between the parties. ECF No. [51] at 1–2. Although Plaintiff claims that Defendant tampered with the Agreement by attempting to void the Agreement four months after the performance event and by highlighting the document, Plaintiff takes the position that the Performance Agreement produced on June 23, 2021 is the agreement which forms the basis of his breach of contract claim. *Id.* ¶¶ 4–6. That Agreement provided by Plaintiff contains

4

the same two arbitration provisions that are in the version provided by Defendant. Specifically, the Agreement submitted by Plaintiff states:

> Any claim or dispute arising out of or relating to this agreement or the breach thereof shall be governed by the laws of the state of NORTH CAROLINA and settled by arbitration in CHARLOTTE, NC accordance with the rules or regulations then obtaining of the American Arbitration Association. The parties hereto agree to be bound by the award in such arbitration and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

*Id.* at 6 (emphasis in original). It also contains the following provision in the choice of law/arbitration section:

> This Agreement shall be construed in accordance with the laws of the State of TENNESSEE. Any claim or dispute arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration with the rules and regulations of the American Arbitration Association. The parties hereto agree to be bound by the award in such arbitration and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

*Id.* at 8 (emphasis in original). Finally, Plaintiff again requested an evidentiary hearing on the matter. *Id.* ¶ 7.

Defendant Caldwell responded to Plaintiff's Notice of Filing, maintaining that the Court should compel arbitration because the Performance Agreement submitted by Plaintiff contains the same arbitration provisions as the Performance Agreement submitted by Defendant Caldwell. ECF No. [55] at 2. Defendant Caldwell notes that the only substantive difference between the two Agreements is the "VOID" marking, the addition of three "purchasers," the date of engagement, and the signature of non-party Steve Anyadike ("Mr. Anyadike") in Plaintiff's version of the Agreement. *Id.* As a result, Defendant Caldwell argues that because the two Agreements contain

the same arbitration provisions, the Court should find, as a matter of law, that the parties agreed to arbitrate. *Id.*

At the evidentiary hearing, Plaintiff conceded that the Performance Agreements are essentially the same, but he argued that both agreements contain arbitration provisions that nullify each other and should therefore be stricken by the Court. Plaintiff argued that because the Agreement contains two choice of law clauses that contradict, the entire clause should be stricken, including the arbitration provision. Additionally, Plaintiff argued that there was no meeting of the minds as to the arbitration provisions and they are unconscionable because the signatories (Plaintiff and Mr. Anyadike) did not have any knowledge of the existence of the arbitration provisions, did not understand their rights under the arbitration provisions, and the effect of the provision was not explained to them.

Defendant Caldwell countered that, as a matter of law, the Court should compel arbitration. Specifically, Defendant Caldwell argued that there is no authority to support Plaintiff's contention that the two choice of law clauses nullify the arbitration provisions, particularly where the two arbitration provisions are identical and provide that arbitration should be completed in accordance the laws of the American Arbitration Association.

At the evidentiary hearing, Plaintiff testified that when he received the Performance Agreement, he only reviewed the names of the parties, the amount to be tendered, the date of the event, and the venue of the performance, but he did not review the remainder of the Agreement, including the arbitration provision. Plaintiff noted that although there was no deadline to return the Agreement signed, he executed it and returned it promptly. He noted that his highest level of education is high school and does not have any issues reading or writing in the English language, nor any kind of intellectual or mental health issue that would preclude his ability to read or

understand the agreement he was signing. Plaintiff stated that he has been an event promoter for fourteen (14) years and in that capacity, he regularly signs contracts. However, Plaintiff noted that he was not aware that the Agreement contained any arbitration provisions and that the nature and effect of such provisions was not explained to him.

Additionally, Mr. Anyadike, who also signed the agreement at issue, testified at the evidentiary hearing. Mr. Anyadike stated that he has a college degree in public relations and has no issues reading and understanding English. He stated that he has been an event promoter for approximately one and a half years but has been managing events for several years. Specifically, he noted that he has been in charge of executing event contracts for approximately one year. Mr. Anyadike noted that he entered into the subject Agreement along with Plaintiff. He testified that he reviewed the Agreement generally, but he did not review the arbitration provisions. Specifically, Mr. Anyadike stated that the nature and effect of the arbitration provisions was not explained to him.

Finally, Ms. K. Serenity Virgil ("Ms. Virgil") testified at the evidentiary hearing. Ms. Virgil stated that she is currently employed as the Chief of Staff at BDBE. She noted that she, along with her assistant, were responsible for negotiating the terms of the subject Agreements. She stated that the parties negotiated certain provisions of the Agreement with Plaintiff such as the required deposit and the parties to the contract. Ms. Virgil testified that the parties did not discuss or negotiate the choice of law or arbitration provisions. She stated that after Plaintiff signed the first version of the Agreement, he requested that additional parties be added. Accordingly, she complied with Plaintiff's request by adding the additional parties to the Agreement, including Mr. Anyadike. She testified that although the agreement was a form agreement used in other

transactions, there were other cases where signatories had requested changes and changes were made.

## II.    ANALYSIS

### a. A Valid Arbitration Agreement Exists Between The Parties

Whether an arbitration agreement exists at all is a matter of contract law.  *See Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) ("The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).  Under Florida law, a valid contract requires "offer, acceptance, consideration and sufficient specification of essential terms."  *Laine v. JetSmarter, Inc.*, No. 18-CV-62969, 2019 WL 1900339, at *2 (S.D. Fla. Apr. 29, 2019) (quoting *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).  Therefore, there must be a meeting of the minds as to all essential terms of the contract.  *See De Beers Centenary AG v. Hasson*, 751 F. Supp. 2d 1297, 1302 (S.D. Fla. 2010).  The moving party bears the burden of demonstrating that there was a valid agreement to arbitrate.  *See Attix v. Carrington Mortgage Servs., LLC*, No. 1:20-CV-22183-UU, 2020 WL 5757624, at *3 (S.D. Fla. Sept. 16, 2020) (noting that the moving party bears the burden of proving the existence and terms of an arbitration agreement).

The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting *First Options* 514 U.S. at 944).  If a valid arbitration agreement exists that delegates the issue of arbitrability, then arbitrability is an issue for the arbitrator and not the court.  *Id.*  In other words, when the threshold question of arbitrability is delegated to the arbitrator by contract, "a court

8

possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529.

For example, in *Laine*, the defendants moved to compel arbitration pursuant to an arbitration clause in a membership agreement. 2019 WL 1900339, at *2. Although the plaintiffs did not dispute that they entered into an agreement with the defendants, they disputed whether the agreement they entered into contained an arbitration clause. *Id.* The District Court concluded that the defendants provided sufficient evidence that the plaintiffs accepted the terms of the membership agreement, which included the arbitration provision. *Id.* Specifically, the District Court found the following evidence to be sufficient: (1) in the verified motion to compel, the defendants stated that the plaintiffs could not become members without "clicking through the screen notifying them of [the] Membership Agreement and Terms of Use, and consenting to be bound by those agreements, including explicit provisions mandating arbitration"; (2) the defendants "attach[ed] documentary evidence of the agreement at issue, as well as a membership invoice containing the [p]laintiffs' names"; and (3) the membership agreement submitted by the defendants contained the subject arbitration clause. *Id.* As a result, the District Court found that a valid arbitration agreement existed and that the issue of arbitrability was to be decided by the arbitrator. *Id.* at *4.

In this case, the parties agree that they entered into a written performance agreement, although they dispute which version of the agreement controls. However, which version controls is not particularly relevant at this stage because both versions contain the same arbitration provisions. Instead, the Court focuses on the Agreement that Plaintiff's claim is subject to and that forms the basis of the breach of contract count at issue. As to that Agreement, Plaintiff contends that the arbitration provisions should be stricken for two reasons. First, Plaintiff argues

9

that the choice of law clauses, wherein the arbitration provisions are contained, conflict and therefore, the entire paragraphs nullify each other and should be stricken. Second, Plaintiff argues that the Court should strike the arbitration provision because there was no meeting of the minds as to arbitration. Finally, Plaintiff argues that the arbitration provisions are unconscionable. After a review of the Agreements provided, the relevant case law, and having heard arguments and testimonies, the Court finds that Plaintiff's arguments lack any support in the law.

First, there is no conflict whatsoever in the Agreement as to the arbitration provisions. Although there is a conflict in the choice of law provisions, there is no conflict with respect to arbitration because the provisions are identical, providing that arbitration is to be conducted in accordance with the rules of the American Arbitration Association. *See* ECF Nos. [14-1] at 6, 8, [51] at 6, 8. Moreover, Plaintiff has not provided any support for the proposition that the entire paragraph should be stricken because of the conflict in the choice of law provision.

Second, there is nothing to suggest that there was no meeting of the minds as to arbitration. To the contrary, the record reflects that there was a meeting of the minds as to the Agreement, but that there was no discussion at all with respect to the arbitration provisions. Specifically, Plaintiff and Mr. Anyadike testified that they read the Agreement and agreed to its essential terms after some negotiation with Ms. Virgil. Specifically, they testified that they read the portions of the Agreement that were important to them, namely the cost of the performance, the date, and the venue. Plaintiff and Mr. Anyadike also testified that they did not read the remainder of the Agreement and did not ask about it. However, the record reflects that Plaintiff and Mr. Anyadike had sufficient time to read the Agreement and had the opportunity to negotiate the portions they did not agree with. The fact that they did not take the time to read the two arbitration provisions and inquire about them does not render the agreement to arbitrate unenforceable. *See Boyd v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 614 F. Supp. 940, 942 (S.D. Fla. 1985) ("One's failure to read a contract before signing it does not render the instrument unenforceable unless the complaining party can demonstrate that he either is prevented from reading the document, or is induced by statements of the other party to refrain from reading it.") (citing *Allied Van Lines v. Bratton*, 351 So. 2d 344, 347–48 (Fla. 1977)).

Finally, the record belies any argument that the Agreement was unconscionable. Plaintiff testified that he has a high school education and that he has no issues reading or understanding English. More importantly, however, Plaintiff testified that he has been a promoter, responsible for executing contracts of this nature, for fourteen (14) years. Plaintiff also testified that he read the contract and he negotiated certain portions of it. Additionally, Mr. Anyadike testified that he has a college degree in public relations and has no issues reading or understanding English. He further testified that he has been a promoter for over one year and has been executing contracts of this nature for approximately one year. Indeed, the only basis in support of the contention that the arbitration provisions are unconscionable is the fact that Plaintiff and Mr. Anyadike did not read the arbitration provisions, and that their legal effect was not specifically explained to them. However, the Court will not relieve Plaintiff and Mr. Anyadike of their obligation to read a contract before signing it. Indeed, there is no evidence on the record to suggest that they were not capable of reading and understanding the Agreement, particularly where they are in the business of managing events and regularly deal with contracts of this nature. *See Sierra v. Isdell*, No. 6:09-CV-124-ORL-19KRS, 2009 WL 2179127, at *5 n.9 (M.D. Fla. July 21, 2009) (finding no unconscionability where the signatory was college educated and "[t]here [was] no evidence that he [was] not sophisticated enough to understand the terms of the contract"). The signatories, including Plaintiff, were sophisticated businessmen who chose not to review the entire Agreement,

and instead, chose to look at those provisions they considered most relevant. They were not provided any misinformation, denied the right to review the agreement, told they could not amend the agreement (in fact, they did), nor is there any other basis the Court can surmise that would support a finding that the Agreement is unconscionable.

The one case cited by Plaintiff, albeit late, is *Basulto v. Hialeah Automotive*, 141 So. 3d 1145 (Fla. 2014). In *Basulto*, the Florida Supreme Court considered whether an arbitration agreement between a car dealership and two car buyers was enforceable. *Id.* at 1151–52. First, the Florida Supreme Court agreed with the trial court's conclusion that a valid arbitration agreement did not exist. *Id.* at 1157. In doing so, the Florida Supreme Court concluded that there was no meeting of the minds as to arbitration because the car buyers did not speak English, the contract was in English, some of the information in the contract was filled in after the fact, and the dealer employees did not explain the nature of arbitration to the car buyers. *Id.* at 1156. Therefore, the Florida Supreme Court reasoned that the arbitration provision could not be enforced because the car buyers clearly did not agree to the arbitration terms. *Id.* at 1157. Here, *Basulto* does not apply to make the arbitration provisions in the Agreement unenforceable because, as set forth above, Plaintiff and Mr. Anyadike are sophisticated businessmen who had the opportunity to read, understand, and negotiate the Agreement. Indeed, the record reflects that upon reviewing the contract, Plaintiff and Mr. Anyadike negotiated certain terms of the contract with Ms. Virgil, which she ultimately modified. The fact that Plaintiff and Mr. Anyadike chose to disregard the arbitration provisions when they agreed to the contract terms does make the provisions unenforceable. As such, the underlying circumstances in *Basulto* are clearly not present here because Plaintiff and Mr. Anyadike were capable of reading and understanding the arbitration provisions.

Moreover, in *Basulto*, the Florida Supreme Court also considered whether the arbitration provisions were unconscionable. *Id.* at 1158. It set forth the general rule of law for unconscionability, explaining that "when a litigant seeks to avoid enforcement of a requirement to proceed with arbitration, pursuant to the parties' prior agreement, the challenging party must establish that the arbitration agreement is both procedurally and substantively unconscionable." *Id.* In doing so, the moving party must establish "[t]he absence of meaningful choice when entering into the contract [] often referred to as procedural unconscionability, which 'relates to the manner in which the contract was entered,' and the unreasonableness of the terms [] often referred to as substantive unconscionability, which 'focuses on the agreement itself.'" *Id.* at 1157–58 (footnotes omitted) (quoting *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999)). In this case, as set forth above, there is simply no record to support a finding of unconscionability. Again, Plaintiff and Mr. Anyadike had the opportunity to read and negotiate the terms of the Agreement, which they did. There is no evidence that they were pressured into executing the Agreement, or were otherwise deprived of a meaningful choice, particularly in light of the fact that they regularly deal in contracts of this kind. The fact that Plaintiff and Mr. Anyadike did not read the arbitration provisions or ask any questions about them does not render the provisions unconscionable.

### b. Defendant Caldwell Is Entitled To Compel Arbitration

The last page of the Performance Agreement indicates that it was entered into between Plaintiff and BDBE. ECF Nos. [14-1] at 9, [51] at 9. BDBE is Defendant Caldwell's management agency. ECF No. [14-1] ¶ 1. Ms. Virgil, an employee of BDBE, signed the Agreement "[o]n behalf of BDBE, acting as Mr. Caldwell's agent." *Id.* ¶ 5. Under the doctrine of equitable estoppel, a non-signatory to an arbitration agreement can compel arbitration when the claims asserted

against him are within the scope of arbitration. *See Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017) (noting that under Florida law, "a defendant who is a non-signatory to an agreement containing an arbitration clause can force arbitration of a signatory's claims when 'the signatory . . . must rely on the terms of the written agreement in asserting its claims against the non[-]signatory . . . .) (quoting *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So. 3d 644, 646 (Fla. 3d DCA 2014)). The reasoning is that "[o]ne cannot both take advantage of contract provisions to seek to impose liability . . . and at the same time avoid another contract term or provision for which it has no use." *Id.* at 1357 (quoting *Giller v. Cafeteria of S. Beach Ltd., LLP*, 967 So. 2d 240, 242 (Fla. 3d DCA 2007)) (alteration supplied). Second, Defendant Caldwell's authority to compel arbitration on behalf of BDBE is simply a matter of agency law. Under Florida law, a non-signatory to an agreement can compel arbitration if "the non-signatory defendants were officers and agents of a signatory, and they had themselves received rights and taken on obligations under the agreement." *Kroma*, 845 F.3d at 1355 (citing *Koechli v. BIP Intern., Inc.*, 870 So. 2d 940, 946 (Fla. 1st DCA 2004)).

In this case, the Court finds that Defendant Caldwell is entitled to compel arbitration under the Performance Agreement. Indeed, the first line of the Performance Agreement states: "This agreement has been made between Khalik Caldwell p/k/a Stunna 4 Vegas . . . and purchaser, Kenneth Carey . . . ." ECF Nos. [14-1] at 5, [51] at 5. Ms. Virgil declared that the Performance Agreement was executed by BDBE "acting as Mr. Caldwell's agent." ECF No. [14-1] ¶ 5. The Complaint purports to bring suit against Defendant Caldwell, in his individual capacity, for breach of the Performance Agreement. *See* ECF No. [1-3] at 7. In asserting his claim against Defendant Caldwell, Plaintiff is relying on the Agreement that is subject to arbitration provision. *See id.* As such, Defendant Caldwell is entitled to compel the arbitration provision contained within the

contract he is being sued under. Although Defendant Caldwell is not a signatory to the Agreement, BDBE signed the Agreement on his behalf and as his agent. Accordingly, Defendant Caldwell has authority to compel arbitration on BDBE's behalf because it is Defendant Caldwell (not BDBE) who received rights and took obligations under the terms of the Agreement.[1]

### III. RECOMMENDATION

The Court concludes that a valid arbitration agreement exists. The Court further concludes that, based on the terms of the subject arbitration clauses, whether Plaintiff's breach of contract claim is arbitrable and whether the performance Agreement is enforceable are issues to be resolved by the arbitrator. Finally, the Court concludes that Defendant Caldwell is entitled to compel arbitration under the Performance Agreement. Therefore, it is hereby **RECOMMENDED** that Defendant Caldwell's Motion to Compel Arbitration be **GRANTED** and that, pending arbitration, this matter be **STAYED** only as to Count I of the Complaint for breach of contract.

### IV. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Any request for an extension of this deadline must be made within seven (7) calendar days from the

---

[1] Having concluded that a valid arbitration agreement exists, the arbitration provisions specifically provide that claims or disputes arising out of or relating to the Performance Agreement must be resolved in arbitration in accordance with the rules and regulations of the American Arbitration Association. *See* ECF Nos. [14-1] at 6, 8, [51] at 6, 8. Because the arbitration provisions incorporate the rules of the American Arbitration Association, the parties have clearly and unmistakably delegated the question of arbitrability to the arbitrator. *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (noting that "when parties incorporate the rules of the Association into their contract, they 'clearly and unmistakably agree[ ] that the arbitrator should decide whether the arbitration clause [applies]'") (alterations supplied) (quoting *Terminix Intern. Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)). Therefore, the Court defers to the arbitrator to determine the arbitrability of Count I.

date of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on July 6, 2021

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE